## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BABU K. THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-1838 |
| | § | |
| PATRICK R. DONOHOE, | § | |
| POSTMASTER GENERAL, UNITED | § | |
| STATES POSTAL SERVICE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this employment discrimination case, Defendant Patrick R. Donohoe, Postmaster General of the United States Postal Service, has filed a Motion for Summary Judgment [Doc. # 28] ("Motion"). After six extensions of time, Plaintiff Babu K. Thomas filed a Response [Doc. # 54]. Defendant has filed a Reply [Doc. # 60]. The Motion is ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that summary judgment should be **granted**.

## I.      BACKGROUND

Plaintiff Babu Thomas was employed by the United States Postal Service at all

times relevant to this suit.  He filed his Original Complaint [Doc. # 1] ("Complaint") in this Court on May 22, 2010.  He alleges multiple incidents of discriminatory treatment beginning in 2002.  He claims that the discrimination was based on his race (self-described as Asian or Asian Indian), national origin (Indian), color (brown), disability (diabetes), and age (over 40).  He further claims that Defendant retaliated against him for complaining about the alleged discrimination.

Before his Complaint was filed, Thomas filed multiple Charges of Discrimination ("Charges") with the Equal Employment Opportunity ("EEO") office.[1] Plaintiff also filed Charges in 2010 and 2011, but did not amend his Complaint to include those claims.

Plaintiff's Charges are summarized below.

## A.   The 2002-2003 Charges

Thomas filed one Charge in 2002 and two in 2003; these three Charges were consolidated for review by the EEO.

Thomas does not furnish the Court with a copy of his 2002 Charge, which was assigned case number 4G-770-0470-02 by the EEO.  According to his Complaint, the

---

[1]   Because Plaintiff was a federal employee, his complaints were filed with the EEO division of the Postal Service rather than the Equal Opportunity Employment Commission ("EEOC").  *See Pacheco v. Mineta*, 448 F.3d 783, 788 & n. 6 (5th Cir. 2006).

2002 Charge alleged (1) on June 22, 2002, Thomas was not allowed to bid on an available mail route because management did not post the bid opportunity and awarded it to a junior employee; (2) on July 15, 2002, Plaintiff's successful bid was canceled; (3) on August 2, 2002, Plaintiff was ordered to move from the route where he was holding a bid, and (4) on August 25, 2002, "management denied Plaintiff his turn to work in favor of another employee unjustly scheduling Plaintiff on Sundays and holidays by breaking rotation."[2]  Although neither party furnishes the Court with a copy of this Charge, this description comports with the EEO Investigative Report in the record.[3]

Thomas' first 2003 Charge, assigned case number 4G-770-0331-03 by the EEO, alleged as follows: (1) on March 21, 2003, he was issued a Letter of Warning for attendance issues; (2) on April 7, 2003, Plaintiff's bid was canceled and awarded to another employee; (3) on April 26, 2003, Plaintiff was issued a letter of warning for poor performance; (4) during the week of May 10, 2003, Plaintiff was scheduled to work at 10:30 a.m. while employees junior to Plaintiff were awarded full routes; (5) on May 15, 2003, Plaintiff's supervisor denied his medically-based request to work an available mounted delivery route; and, (6) on May 15, 2003, Plaintiff was harassed

---

[2]      Complaint, at 3, ¶ 1(a).

[3]      EEOC Investigative Record regarding Thomas (Exhibit 4 to Motion) ("R."), at 2663.

and humiliated by his manager in front of customers on the street.[4]

Thomas' third Charge in the consolidated case pertained to events in July-September 2003 and was assigned case number 4G-770-0507-03.[5]  This Charge contained the following allegations: (1) on July 25, 2003 and August 5, 2003, Plaintiff's supervisor changed his work schedule requiring him to report to work at 3:00 PM, instead of his regular 7:30 a.m. - 4:00 p.m. schedule, while treating others more favorably; (2) from August 2-16, 2003, Plaintiff was scheduled to report at 10:30 a.m., *i.e.*, his work hours were reduced; (3) Plaintiff was harassed and humiliated and treated differently from others "on numerous occasions";[6]  (4) management failed to act immediately when Plaintiff was physically threatened by another employee; (5) on August 15, 2003, Plaintiff was issued a retaliatory and intimidating letter of warning, when others with more serious situations were not disciplined; and (6) on September 10, 2003, Plaintiff's supervisor closed him out of the station when he returned from duty.  In his Complaint, Plaintiff alleges additional incidents not included in the Charge: he was charged with unauthorized overtime;

---

[4]     EEO Complaint of Discrimination, No. 4G-770-0331-03 (Exhibit K to Response) (Exhibit K has multiple, unnumbered pages; the relevant page can be found on ECF in Doc. # 54-3, at page 13 of 20).  *See* Complaint, at 3-4, ¶ 1(b).

[5]     EEO Complaint of Discrimination, No. 4G-770-0507-03 (Exhibit K to Response) (Doc. # 54-3, at page 16 of 20).

[6]     Plaintiff refers to an "attached list of incidents."  *Id.*  However, the list is not included in Plaintiff's exhibits.

overtime that should have been Plaintiff's was given to another carrier; supervisor Mata loudly ordered him to "get up and step it up," which Plaintiff characterizes as humiliation and harassment; supervisor Palomarez "harassed him by following his every movement and told him not to talk for even a minute"; Plaintiff was given a "Pre-D," or pre-disciplinary action, on August 1, 2003; and Plaintiff was harassed for requesting overtime.[7]

The EEO's consolidated case regarding Thomas' 2002 and 2003 Charges was on review before the EEO when Plaintiff filed suit in this Court.  The EEO terminated the case because this suit was filed and raised the same issues.[8]

**B.    The 2007 Charge**

Plaintiff filed a Charge with the EEO on December 18, 2007, complaining of alleged discrimination on August 30-31, 2007.[9]  The Charge alleged that on August 30 "and ongoing" he was "being held to a different standard than others" because he was instructed to complete his route in eight hours, while other carriers were authorized for overtime pay.  Thomas alleged that, because of a "medical restriction"

---

[7]    Complaint, at 4-5, ¶ 1(c).

[8]    *See* Dismissal of Appeal, *Thomas v. Potter*, EEOC Appeal No. 0120102354 (Exhibit 6 to Reply) (on October 25, 2010, the EEO dismissed Thomas' appeal in the consolidated case because the instant suit had been filed in federal court).

[9]    EEO Complaint of Discrimination, No. 4G-770-0449-07 (Exhibit K to Response) (Doc. # 54-4 at page 7 of 22).

limiting his work to eight hours per day he was harassed, subjected to ridicule and derogatory comments, and wrongfully accused of falsifying a document.  He further stated that on August 31 he was "wrongfully disciplined for improper conduct"and that "the employee who caused the problem by doing illegal and improper act[s] was not disciplined."

Plaintiff's Complaint further alleges that "the Agency issued Plaintiff a letter of warning" for poor job performance on or about September 14, 2007.[10]  This allegation was not contained in the 2007 Charge.  Moreover, Plaintiff states that the warning letter was set aside through a settlement in the union's grievance process.[11]

Plaintiff states that he appeals from the EEO's decision dated February 17, 2010.[12]

## C.    **The 2008 Charge**

Thomas' 2008 Charge, filed on October 8, 2008, alleges discrimination on multiple dates in June and July 2008.[13] In particular, the Charge alleges that: (1) on

---

[10]    Complaint, at 6, ¶ 2(2).  Defendant has pointed the Court to records indicating that Thomas was warned because he did not work the full eight hours of his shift.  Reply, at 9 (citing R. at 00639).

[11]    Response, at 14.

[12]    Complaint, at 2, ¶ 3 (discussing EEO Case No. 460-2008-00107X).

[13]    EEO Complaint of Discrimination, No. 4G-770-0343-08 (Exhibit K to Response) (Doc. # 54-4, at page 10 of 22).

June 3, 2008, supervisor Soto shouted at him about his work performance on the workroom floor, supervisor Mata publicized his EEO settlement among other employees, and both Soto and Mata gave him "impossible" instructions; (2) management denied or refused him union representation; (3) on June 6, 2008, supervisors Giangrande and Soto ordered Thomas to "work over [his] medical restrictions"; (4) on June 11, 2008, Thomas became aware that his medical documentation had been lost, destroyed, or illegally taken, and Soto personally conducted a "pre-D" interview in violation of Postal Service policies; (5) Thomas' work hours were changed; (6) on June 4, 2008, Thomas' request for annual leave was denied; (7) on July 8, 2008, Thomas was disciplined;[14] (8) on July 11, 2008, Thomas was not permitted to receive or make phone calls at work, was denied the right to speak to an "EAP counselor," and Soto "invoked an illegal 'Golden Hour' Rule"; (9) on July 12, 2008, management denied him union representation; (10) on July 26, 2008, Thomas was issued a Notice of Seven Day Suspension; and(11) on July 26, 2008, supervisor Palomarez denied Thomas' request (based on illness)  to sit down while working.

The Complaint states that, at the time the Complaint was filed, this Charge had

---

[14]     Plaintiff's Complaint, at 7, ¶ 3(8) says that on July 8, 2008, Plaintiff "was given a Letter of Warning for Failure to Follow Instructions/Poor Performance and Unauthorized Overtime."

"been formal for more than 180 days" and was pending before the EEO.[15]

The Court notes that the Complaint refers to an additional charge from 2008, but that Plaintiff does not provide that charge to the Court with his summary judgment briefing or his Complaint.  According to the Complaint, the additional 2008 Charge alleged that Thomas had been denied the position of Safety Captain at the Richmond Post Office.  The Complaint further states that the case was resolved at mediation on March 27, 2008, when Thomas was recognized as Safety Captain, but that the Postal Service then breached the agreement.  Plaintiff does not specify how the agreement was breached.[16]

**D.    The 2009 Charge**

Thomas' 2009 Charge, filed on May 30, 2009, complained of multiple instances of alleged discrimination in January, February, and March 2009.[17]    The Charge provided by Plaintiff in his summary judgment exhibits does not list specific instances of alleged discrimination, but rather refers to an "attached sheet," which is not

---

[15]    Complaint, at 3, ¶ 4 (discussing EEO Case No. 460-2009-00064X).  *See* 42 U.S.C. § 2000e-16(c) (federal employee may file a civil action within 90 days of receipt of notice of final action by the agency or, if aggrieved by the agency's failure to take final action,  after 180 days from the filing of the initial charge with the agency).

[16]    Complaint, at 7, ¶ 4 (discussing EEO Complaint of Discrimination, No. 4G-770-0117-08).

[17]    EEO Complaint of Discrimination, No. 4G-770-0122-09 (Exhibit K to Response) (Doc. # 54-4, at page 11 of 22).

provided in the exhibits.  The Complaint alleges as follows: (1) Thomas was removed from the acting supervisor position on January 17, 2009; (2) Thomas was denied "prime time annual leave"; (3) Thomas was not provided union representation; (4) Thomas was replaced as safety captain; (5) Thomas was given "excessive and improper discussion regarding work performance"; (6) Thomas was given conflicting instructions from management and denied auxiliary assistance; (7) Thomas was issued a seven day suspension (dated April 24, 2009 and received by Plaintiff on May 15, 2009) based on documents falsified by management; (8) on an unspecified date, Thomas was issued a fourteen day suspension; (9) Thomas was issued a Notice of Removal;[18] (10) on March 16, 2009, "another employee was appointed as 204B supervisor based on racial preference"; (11) Thomas was disciplined for "performance on an over-standard route" and "another route was adjusted to under standards"; (12) Thomas was forced to work "over his medical restrictions" on multiple occasions; and (13) Thomas was "threatened and bullied by management on numerous occasions."[19]

The Complaint states that, at the time this suit was filed, the 2009 Charge had

---

[18]     This allegation apparently pertains to a Notice of Removal dated May 27, 2009. Response, at 39; Reply, at 15.

[19]     Complaint, at 7-8, ¶ 5.

been formal for more than 180 days and was pending before the EEO.[20]

**E.**     **2010 and 2011 Charges**

Plaintiff's summary judgment briefing references and relies upon two EEO Charges filed in 2010 and another Charge filed in 2011.  Plaintiff's Complaint, filed on May 22, 2010, does not state a cause of action based on these Charges.[21] Nevertheless, the Court briefly summarizes each Charge.

On May 7, 2010, Plaintiff filed a Charge that complained of incidents on December 30, 2009, and January 7, 2010.[22] Plaintiff alleged that management "jeopardized [his] safety and health," coerced him to violate his medical restrictions, allowed and fostered a "hostile work environment," and issued "various improper interventions and behaved improperly by ridiculing me in front of other employees on the work floor in violation of the zero-tolerance policy."

On October 22, 2010, Plaintiff filed a Charge complaining of discrimination on August 9, 2010, "and onwards."[23] An attachment to the EEO form lists nineteen

---

[20]     *Id.* at 3, ¶ 5.

[21]     In addition, Plaintiff has not presented evidence of the current status of these Charges in the administrative review process.

[22]     EEO Complaint of Discrimination, No. 4G-770-0132-10 (Exhibit K to Response) (Doc. # 54-4, at page 12 of 22).

[23]     EEO Complaint of Discrimination, No. 4G-770-0370-10 (Exhibit K to Response) (continued...)

instances of alleged discrimination, including harassment by his supervisor, changes in work hours, denied requests for auxiliary assistance, false statements in the grievance process by his supervisors, a "wrongful letter of warning with falsified information for failure to follow improper and unsafe instruction," and an "intentionally constructed seven day suspension for failure to follow instruction" from his supervisor.

On July 20, 2011, Plaintiff filed a Charge complaining of discrimination in May 2011 "and onwards."[24]   Plaintiff complains that he was wrongfully placed on suspension without pay from May 4-25, 2011; that he was "denied work, denied pay, ordered me [sic] to violate my medical restrictions in complete disregard of my safety and health" on May 2, 2011; and that his supervisor "acted improperly and gave various improper instructions," including denying Plaintiff auxiliary help, ordering him to drive an unsafe vehicle, and inserting unissued discipline records in his disciplinary file.

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

---

[23]      (...continued)
(Doc. # 54-4, at page 14-16 of 22).

[24]      EEO Complaint of Discrimination, No. 4G-770-0236-11 (Exhibit K to Response)
(Doc. # 54-4, at page 19-20 of 22).

judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[25]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[27]  The moving party, however, need not negate the elements of the non-movant's case.[28]  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."[29]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material

---

[25]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[26]     FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[27]     *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[28]     *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[29]     *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

fact for trial.[30]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[31]

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[32]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[33]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[34]  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[35]  Instead, the nonmoving party must present specific facts which show "the existence of a genuine

---

[30]     *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[31]     *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[32]     *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[33]     *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[34]     *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyards, Inc., v. Seacor Marine*, *LLC*, 589 F.3d 778 (5th Cir.2009).

[35]     *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

issue concerning every essential component of its case."[36] In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[37]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[38]  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[39]

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only materials cited by the parties."[40]  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not

---

[36]   *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

[37]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[38]   *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[39]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[40]   Fed. R. Civ. P. 56(c)(3).

impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[41]

## III.   ANALYSIS

### A.   Allegations Not Properly Before the Court

Plaintiff's summary judgment briefing references his 2010 and 2011 Charges, and cites the underlying allegations as evidence of Defendant's liability.  However, the Complaint does not allege any facts occurring after 2009, and does not state a cause of action based on the 2010 and 2011 Charges filed with the EEO.[42]  Moreover, most of the incidents alleged in the 2010 and 2011 Charges occurred after this lawsuit was filed on May 22, 2010, and Plaintiff never amended, or sought leave to amend, his Complaint so as to include these 2010 and 2011 allegations.[43]  Plaintiff has cited

---

[41]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

[42]   In addition, the Court notes that Plaintiff provides no information regarding the current status of these charges.  For federal employees, lack of administrative exhaustion deprives the Court of subject matter jurisdiction over Title VII claims. *Tolbert v. United States*, 916 F.2d 245, 247-48 (5th Cir. 1990).

[43]   *See* FED. R. CIV. P. 15(d) ("Supplemental Pleadings.  On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.").

no authority for inclusion of these allegations in the suit at bar.[44]

The Court therefore holds that the alleged incidents from 2010 and 2011 are not properly before the Court.  The 2010 and 2011 incidents will not be considered as evidence of Defendant's liability.

**B.**     **Title VII Discrimination Claims**

Thomas alleges that Defendant discriminated against him based on his race, color, and national origin in violation of Title VII.  Under the burden-shifting standard applicable to Title VII claims, a plaintiff claiming discrimination must establish a *prima facie* case by demonstrating that he or she: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was the subject of an adverse employment action; and (4) was treated less favorably than similarly situated persons who were not members of the protected class.[45]

A plaintiff's *prima facie* case creates an inference of intentional discrimination that shifts the burden back to the defendant to articulate a legitimate,

---

[44]     The claims from 2010 and 2011 Charges are not sufficiently within the scope of the earlier EEO charges to qualify for consideration in this suit.  *See Sapp v. Potter*, 413 F. App'x 750, 752 (5th Cir. 2011) ("Merely because both sets of facts involve the same alleged motive does not mean that the third and fourth EEO complaints were within the scope of the first two investigations.").

[45]     *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (race); *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009) (gender); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (race).

nondiscriminatory reason for the adverse employment action.[46]  The defendant's burden at this stage is a burden of production, not persuasion, and "'can involve no credibility assessment.'"[47]

If the employer provides such a reason, the burden then shifts back to the plaintiff to offer evidence to demonstrate a genuine issue of material fact that "either (1) the defendant's reason is false and is a pretext for discrimination, or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and the plaintiff's protected characteristic was a 'motivating factor' in its decision."[48]  Under the "motivating factor" analysis, if the plaintiff demonstrates that the protected characteristic was a motivating factor in the employment decision, the employer must then prove "that the same adverse employment decision would have been made regardless of discriminatory animus."[49]

Despite this intermediate burden shifting, the plaintiff at all times bears the

---

[46]  *McDonnell Douglas*, 411 U.S. at 802;  *Lee*, 574 F.3d at 259.

[47]  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).

[48]  *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013); *Taylor v. Peerless Indus. Inc*., 322 F. App'x 355, 360 (5th Cir. 2009) (citing *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004)).

[49]  *Taylor*, 322 F. App'x at 361.

ultimate burden to demonstrate that the defendant intentionally discriminated.[50]

### 1.    *Prima Facie* Case

Defendant does not dispute that Thomas satisfies the first two prongs of the *prima facie* case, *i.e.*, that he is a member of the protected classes he invokes, and that he was qualified for the positions relevant to his claims.  However, Defendant argues that summary judgment is warranted because Plaintiff has not presented competent summary judgment evidence going to the third and fourth prongs of the *prima facie* case, *i.e.*, that Thomas was subject to an "adverse employment action," and that Thomas was treated less favorably than similarly situated people outside the protected class.

**<u>Adverse Employment Action</u>**.—Under the third prong of the *prima facie* case of discrimination, a plaintiff must show that he was the subject of an adverse employment action, which includes only "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, or compensating.[51]

Plaintiff's evidence going to this third prong is weak.  His summary judgment

---

[50]    *Reeves*, 530 U.S. at 143; *Lee*, 574 F.3d at 259 n. 13 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[51]    *Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt.*, 2012 WL 5951550 (5th Cir. Nov. 29, 2012); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). "[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation."  *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008).

briefing identifies only the following as potential adverse employment actions: "Letters of Warning, Suspensions and Removals from the clock, as well as having his 204B Acting Supervisor job taken away and his Safety Captain position given to someone else."[52]  Although Plaintiff bears the burden to demonstrate a *prima facie* case under Title VII, he provides no dates or further details for these alleged actions.[53]

Many of the actions cited by Plaintiff are not, as a matter of law, adverse employment actions.  For example, although Plaintiff lists multiple Letters of Warning issued against him,[54] this is not evidence of an adverse employment action.[55] Moreover, Plaintiff has neither made argument or presented evidence that the letters

---

[52]     Response, at 23-24.

[53]     Elsewhere in his briefing, when listing instances of alleged disparate treatment against him, Plaintiff lists similar incidents.  *See* Response, at 37-40 ("Plaintiff received disparate treatment when . . .") (listing 38 separate incidents of alleged discrimination).  This list of allegations cites only to Plaintiff's own affidavit for support.  *Id.*  (citing Affidavit of Babu Thomas [Doc. # 46] ("Thomas Affidavit"), ¶¶ 4-8, 10, 11, 13-19, 21-24, 26-43, 45-51).  Defendant's Reply objects to Thomas' affidavit as self-serving and hearsay.  As stated above, affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4); *Love*, 230 F.3d at 776; *Hinsely*, 201 F.3d at 643. However, because the Court does not rely on the Thomas Affidavit to arrive at any conclusions adverse to Defendant,  Defendant's objections are moot.

[54]     *See* Plaintiff's Response, at 37-40 (listing as evidence of discrimination warning letters dated March 21, 2003 (attendance); April 26, 2003 (poor performance); and September 14, 2007 (poor performance)); Complaint, at 7, ¶ 3(8) (referring to a warning letter dated July 8, 2008, that pertained to poor performance and unauthorized overtime).

[55]     *Luckman v. United Parcel Serv.*., 44 F. App'x 651 (5th Cir. 2002).

resulted in any actual consequences to him.[56]  Similarly, although Plaintiff cites as "adverse employment actions" his removal as "Safety Captain" in the workplace and his removal from the "204B Acting Supervisor" position, he cites no authority suggesting that such incidents could qualify as an "ultimate employment decision."[57]

Plaintiff also identifies suspensions and "removals from the clock" as adverse employment actions, which involve discipline that potentially is more serious.[58] Nevertheless, the record is unclear as to whether Plaintiff received any actual consequence from the discipline.  Plaintiff's complaint regarding his "removal from the clock" apparently pertains to a disciplinary action on May 27, 2009.[59]  However, Defendant has presented evidence that this discipline was reduced after the union grieved the discipline on Plaintiff's behalf.[60]  As for Plaintiff's allegations regarding

---

[56]    *See Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (holding in retaliation context that "[a]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action under Title VII.")

[57]    *See McCoy*, 492 F.3d at 559.

[58]    The parties do not explain the difference between a suspension and a removal from the clock.

[59]    *See* Response, at 37-40 (Plaintiff's only alleged "removal" within the period relevant to the claims in this case was on May 27, 2009).

[60]    *See* R. at 01328, n.1 (EEO Acknowledgment of Amendment-Dismissal re: Agency No. 4G-770-0122-09 states "Evidence of record indicates the Notice of Removal issued to [Thomas] [on May 27, 2009] was reduced to a discussion via a Step A grievance settlement dated July 10, 2009.").  Similarly, Defendant has presented
(continued...)

his suspensions, although he was issued a seven-day suspension on July 26, 2008, the suspension did not involve any loss of time or pay.[61] Given Plaintiff's failure to provide any evidence of the consequences of his suspension, it is highly doubtful that such suspension could qualify as an adverse employment action.[62]

Despite these weaknesses in Plaintiff's evidence, the Court need not resolve the issue. Even if Plaintiff had shown competent summary judgment evidence of an adverse employment action, his *prima facie* case clearly fails on the fourth prong.[63]

---

[60]    (...continued)
evidence that multiple suspensions received by Plaintiff in 2009 were reduced or reversed after being grieved.  *See* R. 01318; R. 02194; R. 02244; R. 02268.

[61]    R. at 1101 (Notice of Suspension, July 23, 2008) ("While this suspension does not result in a loss of time or pay, it is equivalent to and is of the same degree of seriousness as a time-off suspension [for purposes of progressive discipline]"). According to documentation supplied by Defendant, the suspension was imposed for two reasons: first, on June 3, 2008, Plaintiff brought back undelivered mail and did not notify management; second, on June 9, 2008, Plaintiff again brought back undelivered mail, despite having adequate time to complete his route.  R. at 01100-1101.

[62]    The Fifth Circuit has held that, in some circumstances, a suspension is an adverse employment action, but the cases generally pertain to suspensions *without pay*.  *See Hypolite v. City of Houston, Tex.*, 493 F. App'x 597, at *7 (5th Cir. 2012); *Wilson v. City of Baton Rouge*, 327 F. App'x 497, 498 (5th Cir. 2009); *LeMaire v. La. Dept of Transp. & Dev.,* 480 F.3d 383, 390 (5th Cir.2007).

[63]    The remainder of the 38 incidents alleged by Plaintiff in his summary judgment briefing also do not qualify as "adverse employment actions" under Fifth Circuit authority.  *See* Plaintiff's Response, at 37-40 (listing multiple other complaints including changes to Plaintiff's work schedule, harassment in the workplace, having overtime taken away or being charged with unauthorized overtime, not being awarded mail routes he requested, and being denied access to union personnel). Similarly, Plaintiff's EEO Charges contain additional allegations, as set forth exhaustively in the
(continued...)

**Comparators**.— The fourth prong of the *prima facie* case requires Plaintiff to show that he was treated less favorably than similarly situated persons who were not members of the protected classes, *i.e.*, persons who did not share Plaintiff's race (self-described as Asian), color (brown), or national origin (Indian).   To satisfy the "similarly situated" requirement, the situations of the plaintiff and the non-protected class member must be not merely similar, but "nearly identical."[64]

Plaintiff has presented no competent summary judgment evidence of comparators who were treated more favorably in similar circumstances.   Plaintiff's summary judgment briefing names three comparators: Guadalupe Palomares, P.T. Nguyen, and Joel Loop.[65]   He asserts as follows:

> Plaintiff was treated less favorably than the other part-time flexibles [PTFs] at the Richmond station.   Plaintiff has demonstrated that, [sic] more unnecessary changes were made to his schedule than they were to the schedules of other PTFs at the Richmond, Texas station.[66]

---

[63]   (...continued)
Background section above, but has not presented competent summary judgment evidence that any alleged events could qualify  as "ultimate employment decisions" under Fifth Circuit authority.

[64]   *Perez v. Tex. Dept. of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004).

[65]   Response, at 24.  Elsewhere in his briefing, Plaintiff identifies Palomares as "Hispanic female," Nguyen as "Vietnamese-Asian," and Loop as "Caucasian."  Response, at 6.

[66]   Response, at 24.  *See id.* at 24-25 ("Thomas asserts that others similarly situated were treated more favorably than he was treated.  The evidence shows that there were other employees similarly situated who were of other races whose schedules were not changed as frequently as Plaintiff's schedule was changed").

Plaintiff provides no further details and no citations to the record. He therefore has not met his burden to establish that Palomares, Loop, and Nguyen were treated more favorably under similar circumstances. Furthermore, this argument goes only to Plaintiff's schedule changes, which were not alleged by Plaintiff as an adverse employment action.[67] The argument therefore is irrelevant. Plaintiff has identified no similarly situated employees who were treated more favorably under circumstances the same as or similar to those surrounding his July 23, 2008, suspension, or any other potential adverse employment action.

Because Plaintiff has failed to present any evidence going to the fourth element of his *prima facie* case, summary judgment is appropriate for Defendant on Plaintiff's claims of discrimination under Title VII.

### 2.    Pretext

Moreover, even assuming that Plaintiff had established a *prima facie* case under Title VII, his case nevertheless fails. Defendant has articulated non-discriminatory reasons for the allegedly adverse employment actions, including Plaintiff's suspension on July 23, 2008.[68] Defendant states, with citation to the record, that the suspension

---

[67]    As stated previously, under Fifth Circuit authority only "ultimate employment decisions" can suffice as adverse employment actions. *McCoy*, 492 F.3d at 559. Plaintiff has made no argument that his schedule changes amounted to ultimate employment decisions.

[68]    *See* Reply, at 9-18; Motion, at 22-26.

was justified by Plaintiff bringing back undelivered mail, and thus failing to perform his job duties within the allotted time, on June 3 and June 9, 2008.[69]

Plaintiff has not presented competent summary judgment evidence that Defendant's articulated reasons for the 2008 suspension, or any other allegedly adverse action, are a pretext for unlawful discrimination. Although Plaintiff's briefing takes issue with some of Defendant's actions—arguing, for example, that Defendant unfairly expected Plaintiff to complete ten hours worth of work within an eight-hour workday—these arguments fail to demonstrate that Defendant was motivated by Plaintiff's race, color, or national origin. At most, Plaintiff presents his own subjective belief as to Defendant's motivation.[70] His Affidavit makes several allegations relevant to his protected characteristics of race, national origin, and color, alleging that supervisor Mata publicly, and falsely, stated that he was Iranian, and that people in the workplace said that he "ate camels."[71] However, the Affidavit claims that these alleged all occurred in August 2002. They thus are too remote in time from the 2008 suspension, or any potential adverse employment action, to be relevant as

---

[69]     Reply, at 12-13 (citing R., at 01100-1101).

[70]     *See*, *e.g.*, Thomas Affidavit, at 7, ¶ 41 ("On July [23], 2008, I was issued a notice of seven-day suspension, which was unjust and unwarranted and constituted harassment and discrimination.").

[71]     *Id*. at 2, ¶ 6.

evidence of pretext.[72]

Without any competent summary judgment evidence of pretext, Plaintiff's Title VII claims must fail.[73]

## C.    **Title VII Retaliation Claim**

Title VII forbids an employer to retaliate against an employee who brings a charge of discrimination.[74]  A plaintiff can establish a *prima facie* case of unlawful retaliation under Title VII by showing that (1) he engaged in a "protected activity"; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action.  If plaintiff establishes a *prima facie* case, the employer must then articulate a legitimate, non-retaliatory reason for its employment action.  Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the defendant actually was motivated by retaliation.[75]

---

[72]    *See Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000) ("in order for comments in the workplace to provide sufficient evidence of discrimination, they must be 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.") (internal citation, quotation marks, and alterations omitted).

[73]    *See Turner v. Baylor Richardson Medical Center,* 476 F.3d 337, 345-46 (5th Cir. 2007).

[74]    42 U.S.C. § 2000e-3.

[75]    *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012); *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).

A plaintiff relying on circumstantial evidence may prove Title VII retaliation under a "mixed motive" theory, as well as the "pretext" theory that previously was available.[76]   Under the pretext theory, Plaintiff may carry his ultimate burden by showing that Defendant's proffered reason is a pretext for retaliation—in other words, that retaliation was the "but for" cause for the adverse action.[77]   Under the mixed motive theory, Plaintiff may show that illegal retaliation was one of several reasons for the adverse action.  Under this approach, the Defendant may defend the action by establishing that "it would have made the same decision even without consideration of the prohibited factor."[78]

In the case at bar, the Court will assume, without deciding, that Thomas has demonstrated a *prima facie* case of retaliation.  The Court notes, however, that Plaintiff's briefing does not identify the precise adverse employment actions upon which he relies.  In one section of his Response, Plaintiff lumps together the alleged adverse employment actions for discrimination and retaliation claims, *i.e.*, as for his

---

[76]   *Smith v. Xerox*, 602 F.3d 320, 333 (5th Cir. 2010) ("motivating factor" standard); *Aryain*, 534 F.3d at 484 ("pretext" standard).

[77]   *Reine v. Honeywell Int'l, Inc.*, 362 F. App'x 395, 398 (5th Cir. 2010) (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005)).

[78]   *Smith*, 602 F.3d at 333.  Under the "motivating factor" test, assuming that Plaintiff could show that both legitimate and illegitimate reasons motivated the involuntary transfer, Defendant bears the burden to show, as an affirmative defense, that "its legitimate reason standing alone would have produced the same decision." *Garcia v. City of Houston*, 201 F.3d 672, 676 (5th Cir. 2000).

discrimination claim, he relies upon "Letters of Warning, Suspensions and Removals from the clock, as well as having his 204B Acting Supervisor job taken away and his Safety Captain position given to someone else."[79]  In another section of his briefing, Plaintiff describes the adverse employment actions as "[being] removed from the clock numerous times and [having] progressive discipline run against him, that was later proven to be just plain wrong when it was thrown out due to grievances that were filed and heard with a finding in Plaintiff's favor."[80]  Plaintiff's briefing contains no specific dates for these adverse employment actions, nor does it provide any citation to the record.  In addition, although Plaintiff filed repeated EEO Charges and thus engaged in multiple protected activities over the period relevant to this lawsuit, he fails to connect specifically any particular adverse actions to a particular protected activity.

Despite the weaknesses in Plaintiff's *prima facie* case, the Court proceeds to the next stage of the analysis.  Defendant has articulated non-discriminatory reasons for the allegedly adverse employment actions cited by Plaintiff.[81]  The burden therefore

---

[79]     Response, at 23-24.

[80]     *Id*. at 34-35.

[81]     *See* Reply, at 9-18 (citing record).  Defendant states, for example, that Plaintiff's Letter of Warning dated September 14, 2007, was justified by a supervisor's street observation of Plaintiff that revealed that Plaintiff could have delivered another one hour and ten minutes of mail, but had left the mail at the station, *id.* at 9 (citing R. at
(continued...)

shifts back to Plaintiff to demonstrate that Defendant actually was motivated by retaliation.  Plaintiff argues as follows:

> There was a causal link between the retaliatory acts of management and the adverse employment actions that he suffered when he was removed from the clock numerous times and had progressive discipline run against him, that was later proven to be just plain wrong when it was thrown out due to grievances that were filed and heard with a finding in Plaintiff's favor.[82]

He provides no record citations in support of his argument.

To the extent Thomas relies on the fact that multiple disciplinary actions against him were grieved and reduced, this evidence in itself fails to demonstrate retaliatory motive.  A plaintiff's challenge to the facts underlying the employer's decision is insufficient to create an issue of pretext.[83]

Plaintiff offers no further argument in support of his position that Defendant acted with retaliatory motive.  His subjective belief that Defendant's actions were

---

[81]   (...continued)
00639); that Thomas' reporting time was changed on July 4, 2008, along with the reporting time for two other carriers, because of the mail flow coming in from the plant, *id.* at 11-12 (citing R. at 01025); and that Thomas' position as 204B Supervisor ended simply because 204B Supervisor is a temporary position.  *Id.* at 17 (citing Thomas Deposition (Exhibit 1 to Motion), at 139; R. at 01817-01820).

[82]   Response, at 34-35.

[83]   *LeMaire*, 480 F.3d at 391 (when considering a plaintiff's evidence of pretext, courts are not to "engage in second-guessing of an employer's business decisions"; Title VII does not require proper decisions by an employer, but only non-retaliatory ones).

retaliatory clearly is insufficient to demonstrate a genuine issue of material fact.[84]

Because Plaintiff has failed to demonstrate a conflict in substantial evidence on the

ultimate issue of retaliation, summary judgment is granted for Defendant.[85]

## D.  <u>Age Discrimination Claim</u>

Plaintiff brings a claim of discrimination under the Age Discrimination in

Employment Act ("ADEA").  The Title VII burden-shifting framework applies to

ADEA cases.[86]  To establish a prima facie case of age discrimination based on

circumstantial evidence, a plaintiff must show that "'(1) he was discharged; (2) he was

qualified for the position; (3) he was within the protected class at the time of

discharge; and (4) he was either i) replaced by someone outside the protected class,

ii) replaced by someone younger, or iii) otherwise discharged because of his age.'"[87]

---

[84]  *Aryain*, 534 F.3d at 487 ("[a] plaintiff cannot prove pretext simply by re-raising her otherwise non-actionable allegations of retaliation—such an argument offers no more than the plaintiff's subjective belief that the defendant acted in a retaliatory manner on multiple occasions"); *Eberle v. Gonzales,* 240 F. App'x 622, 629 (5th Cir.2007) (employee's subjective belief that he was retaliated against is insufficient to establish the causal link element of the *prima facie* case of retaliation).

[85]  *Hernandez*, 670 F.3d at 660 ("a plaintiff may avoid summary judgment on 'but for' causation by demonstrating a conflict in substantial evidence on this ultimate issue. Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions") (quotation marks and citation omitted).

[86]  *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

[87]  *Id.* at 378 (quoting *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

Plaintiff alleged age discrimination in his 2009 Charge.[88]   However, he failed to identify which of the actions against him were allegedly motivated by his age.  His briefing also fails to allege which actions against him were the result of age discrimination.  However, even assuming that Plaintiff somehow could satisfy the first three elements of the *prima facie* case, he has not alleged or presented evidence of any facts going to the fourth prong, *i.e.*, that he was replaced by someone outside the protected class or younger than he, or that he was otherwise discharged because of his age. Rather, Plaintiff argues as follows:

> Plaintiff was in a protected age group.  He was over the age of 40 years of age when removed due to performance.   He was discharged or demoted.  Throughout 2009, Plaintiff was harassed and retaliated against through the use of progressive discipline that was unwarranted.  He was removed from an acting supervisor position, replaced as the safety captain, issued a 7-day and a 14-day suspension, and issued a notice of removal.  He was over the age of 40, and he was performing his job at a level that met his employer's legitimate expectations.[89]

Plaintiff makes no allegation regarding who replaced him, the age of any such replacements, or other facts demonstrating that he was discharged "because of" his age.[90]  It is, of course, Plaintiff's burden to present evidence of a *prima facie* case of discrimination.  Because Plaintiff has failed to do so, summary judgment is granted

---

[88]     Although Thomas also alleged age discrimination in his 2010 and 2011 Charges, those allegations are not properly before the Court.

[89]     Response, at 27.

[90]     *Jackson*, 602 F.3d at 378.

for Defendant.

## E.   __Disability Claim__

Plaintiff alleges that Defendant discriminated against him based on a disability, claiming that his diabetes prevents him from working more than eight hours a day but that Defendant "frequently" required him to do so.[91]  Plaintiff's briefing does not identify any dates for the alleged discrimination based on disability.  Disability discrimination is alleged in his 2009 charge.

The Americans with Disabilities Act ("ADA") prohibits discrimination by covered entities against person with a disability.[92]  However, the statute excludes the entire federal government, including the United States Postal Service, from coverage.[93]  Plaintiff's claim against the Postal Service therefore is not permitted under the ADA.

Moreover, as argued by Defendant, Plaintiff has not offered evidence that would be sufficient to satisfy a *prima facie* case for discrimination under the ADA. An ADA plaintiff must demonstrate that his or her impairment "substantially limits"

---

[91]      Response, at 22.

[92]      42 U.S.C. § 12112(a).

[93]      42 U.S.C. § 12111(5)(B)(i); *Smith v. Potter*, 400 F. App'x 806, 812 (5th Cir. 2010); *Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003).

a "major life activity."[94] These terms must be "interpreted strictly to create a demanding standard for qualifying as disabled."[95]  Although Plaintiff alleges that he is disabled because of diabetes, he cites only to his deposition testimony, in which he states that his diabetes caused him to feel tired and was the cause of his restriction to work no more than eight hours per workday.[96] His summary judgment briefing identifies no evidence establishing that he has been diagnosed with diabetes, nor of the disease's effect on his abilities.  This evidence is insufficient for a finding of disability under the ADA, which requires specific evidence of a plaintiff's actual limitations.[97]

Summary judgment is granted for Defendant on Plaintiff's claim under the ADA.

## F.   Hostile Work Environment Claim

---

[94]   A "disability" is defined in the Act as follows: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment.  42 U.S.C. § 12102(1); *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 855 (5th Cir. 2010)*; Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999).

[95]   *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (internal quotation marks and citation omitted).

[96]   Response, at 22 (citing Thomas Deposition (Exhibit 1 to Motion), at 92).

[97]   *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 223 (5th Cir. 2011) ("'[N]either the Supreme Court nor this court has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies.'") (quoting *Waldrip,* 325 F.3d at 656).

Thomas alleges that he was subjected to a hostile work environment because he was threatened, humiliated, and harassed over many years.  A Title VII hostile work environment claim requires that the plaintiff prove five elements: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on the plaintiff's protected class; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and did not take prompt remedial action.[98]  Proof of the fifth element is not required when the purported harasser is a supervisor.[99]

To satisfy the fourth element, a plaintiff must demonstrate that the harassment was sufficiently "severe or pervasive" to alter the conditions of employment and create an abusive working environment.[100]  In making the determination, courts look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work

[98]   *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (citing *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001)); *Lyles v. Texas Alcohol Beverage Comm'n*, 379 F. App'x 380, 384 (5th Cir. 2010).

[99]   *Woods*, 274 F.3d at 299 n. 2.

[100]   *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)); *Harvill*, 433 F.3d at 434 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

performance.[101]   A workplace environment is hostile when it is "'permeated with discriminatory intimidation, ridicule, and insult."[102]   Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not affect a "term, condition, or privilege" of employment.[103]  "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."[104]

Thomas fails to present competent summary judgment evidence of a hostile work environment.  The third element of a hostile work environment claim requires a showing that the harassment was based on a characteristic protected by Title VII. However, although Plaintiff alleges harassment over a period of more than ten years, the majority of his allegations lack any reference to his race, color, or national origin. In Thomas' summary judgment briefing on his hostile work environment claim, the only reference to a protected characteristic is his allegation regarding slurs that apparently were directed to Thomas in 2002:

---

[101]    *Harvill*, 433 F.3d at 434 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[102]    *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quoting *Harris*, 510 U.S. at 21).

[103]    *Id*.

[104]    *Harvill*, 433 F.3d at 434 (internal citations and quotation marks omitted).

> [Thomas] was subject to unwelcome harassment, including, but not limited to angry glares, cursing, calling him names such as "Iranian," "Brown Shit," and "Bin Laden's Brother" (in 2002, immediately after the "911" incident in New York City), <u>and telling him what a sorry worker he was in front of other employees</u>, such as telling him "You just don't want to work", or "You are just slow", or "You sorry", "You sorry ass", and "You should be ashamed of yourself.["][105]

Similarly, Plaintiff's affidavit contains only one paragraph alleging harassment based on a protected characteristic, an allegation also pertaining to events in 2002:

> [Mata, my supervisor,] has publicly stated that I am an Iranian, and I'm not an Iranian.  During that time [around August 25, 2002] there was a bias against people from the Middle East.  He also told other people that I was an Iranian.  They sat around and talked to each other about me and said that I ate camels.[106]

For the remainder of the harassment or belittlement alleged by Plaintiff, Plaintiff does not even allege a connection to race or any protected characteristic.[107]

The Court therefore considers whether the comments allegedly directed to Thomas in 2002, and any potentially related harassment, can support a hostile work

---

[105]    Response, at 31 (emphasis original).

[106]    Thomas Affidavit, at 2, ¶ 6.

[107]    *See*, *e.g.*, Response, at 31 (alleging that supervisor found trivial fault in Thomas' work and that his criticisms lacked substantive and quantifiable evidence); *id*. at 33 (alleging that Plaintiff "was taunted and teased with the intention to embarrass and humiliate him" and that his supervisor "set unrealistic goals and deadlines" for Plaintiff that were unachievable or were changed without notice or reason); Thomas Affidavit, at 6, ¶ 30 (alleging that Thomas was "harassed by work restrictions and derogatory comments" and was "ridiculed in front of other co-workers regarding my medical work restriction due to diabetes that limits my work to an eight-hour day").

environment claim.  Although Plaintiff's briefing does not identify the person who made these comments, Thomas' Affidavit alleges that they were made by supervisor Mata.

To satisfy the fourth element of a hostile work environment claim, Thomas must show that the alleged harassment affected a "term, condition, or privilege" of employment, which requires a showing that the harassment was sufficiently "severe or pervasive" to alter the conditions of employment and create an abusive working environment.[108]  In this case, apart from the allegations reproduced above which pertain to events in 2002, Thomas' allegations in his briefing contain absolutely no specifics as to when or how the alleged harassment occurred, but rather make vague, broad statements that harassment spanned more than ten years.[109]  Although his briefing makes a cursory citation to 23 paragraphs of his Affidavit,[110] the only allegations relevant to Mata—the only person Thomas identifies as expressing animus based on any protected characteristic—are that Mata verbally harassed him on May

---

[108]   *Stewart*, 586 F.3d at 330.

[109]   For example, Thomas asserts that he was "threatened and humiliated over and over again in front of co-workers and customers." Response, at 29.  He further asserts that he "was the subject of nit-picking and trivial fault finding by Supervisor Mata, and other management officials, for many years, from 2000 through 2012, especially in front  of other employees." *Id*. at 31.

[110]   Response, at 32 (citing Thomas Affidavit, ¶¶ 16, 18, 19, 20-24, 26, 29, 31-34, 37-41, 45-47, and 53).

30, 2003 (¶ 16); that Mata charged him with unauthorized overtime on July 29, 2003 (¶ 24); and that Mata gave Thomas' overtime to another employee on July 10, July 21, and August 7, 2003 (¶ 26).  Any other allegedly harassing incidents therefore are deemed irrelevant to Thomas' hostile work environment claim.[111]

To determine whether the plaintiff's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance.[112]   In this case, considering the totality of the circumstances regarding all allegations Thomas has made concerning Mata, the allegations do not demonstrate a genuine issue of material fact as to "severe or pervasive" harassment.  Among other issues, Thomas has not alleged harassment

---

[111]    Although in some cases discriminatory intent for an incident that is not race-based can be imputed from separate incidents, the Fifth Circuit has held that the same actor must be involved.  *See Hernandez*, 670 F.3d at 654 (distinguishing case in which harassment that was not race-based was perpetrated by a coworker who had engaged in pattern of race-based comments for approximately one year).  The *Hernandez* Court refused to consider "various incidents of harassment not based on race" when deciding the plaintiff's hostile work environment claim, noting that the plaintiffs "did not have evidence that the alleged non-race-based harassment was part of a pattern of race-based harassment." *Id.*  Moreover, as in *Hernandez*, the record in this case contains evidence that many of the incidents Thomas cites as alleged harassment have other non-harassing explanations.  *See* Reply, at 9-18 (citing record).

[112]    *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011); *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

by Mata that was frequent, physically threatening, or severe under Fifth Circuit standards.[113]   He has failed to present evidence demonstrating a genuine issue of material fact as to conduct that is "objectively offensive, meaning that a reasonable person would find it hostile and abusive."[114]

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 28] is **GRANTED**.  All of Plaintiff's claims are **dismissed with prejudice**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **18**th day of **March, 2013**.

Nancy F. Atlas
United States District Judge

---

[113]   *See Stewart*, 586 F.3d at 330-31; *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004).

[114]   *Stewart*, 586 F.3d at 330 (internal citation and quotation marks omitted).